EUGENE G. IREDALE: SBN 75292
JULIA YOO:  SBN 231163
GRACE JUN, SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525   FAX: (619) 233-3221

Attorneys for Plaintiff James Adams III

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ADAMS III,<br><br>  Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, CALIFORNIA DEPARTMENT OF JUSTICE, MONIQUE MYERS, SOTELO, LIMON, WAGNER, RAMOS, and DOES 1-50<br><br>  Defendants. | CASE NO. '16CV2161 W    NLS<br><br>**COMPLAINT FOR:**<br><br>1)  Execution of a Warrant Obtained In Violation of *Franks v. Delaware* (42 U.S.C. § 1983)<br>2)  Wrongful Detention of, and Refusal to Return, Seized Property (42 U.S.C. § 1983)<br>3)  Excessive Force (42 U.S.C. § 1983)<br>4)  Negligence<br><br>**JURY TRIAL IS HEREBY DEMANDED PURSUANT TO FRCP RULE 38** |

COME NOW Plaintiff, James Adams III through his attorneys of record, and allege and complain as follows:

## I.
## GENERAL ALLEGATIONS

1. This is an action under 42 U.S.C. § 1983 to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States. This action involves state law causes of action as well.

2. Jurisdiction is based upon the existence of a federal question, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4).

3. This Court has supplemental jurisdiction over any pendent state law claims under 28 U.S.C. § 1367(a).

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of California because the acts or omissions which form the basis of the Plaintiff's claims occurred in San Diego County, within the Southern District of California.

5. Plaintiffs have complied with Cal. Gov. Code §§ 800 et seq.

6. At all times relevant to this complaint, Defendants DOES 1-25 were police officials and other agents of the CALIFORNIA DEPARTMENT OF JUSTICE, Firearms Bureau. At all times relevant hereto, these defendants were acting in their professional capacity.

7. At all times relevant to this complaint DOES 26 - 50 were official agents and employees of other law enforcement and prosecution agencies. At all times relevant hereto DOES 26 - 50 were acting in their professional capacity.

8. Plaintiffs are ignorant of the true names and capacities of DOES 1 -

50 and/or the facts giving rise to their liability and will amend this complaint once their identities as well as the facts giving rise to their liability have been ascertained.

9. Defendants, including DOES 1 - 50, were the agents, servants and employees of each other and of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer. Each of the defendants had approved or ratified the actions of the other defendants, thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

## II.
## PARTIES

10. Plaintiff James Adams III is a 47 year old resident of the city of Chula Vista. He is employed as an Immigration and Customs Enforcement (ICE) Agent.

11. At all times relevant to this complaint, Defendant Monique Myers was the Deputy District Attorney prosecuting James Adams III with a simple battery case.

12. At all times relevant to this complaint, Defendants Sotelo, Limon, Wagner, Ramos, and Cedusky were agents with the California Department of Justice, Firearms Bureau.

13. Plaintiff are informed and believe that at all relevant times, each Defendant acted within the scope of agency or employment.

14. Plaintiffs are informed and believe that each of the Defendants caused, and is responsible for the below-described unlawful conduct and resulting injuries in that each of the Defendants participated in the unlawful conduct or acted jointly with others who did so; authorized, acquiesced in or set in motion actions that led to the unlawful conduct; failed to take action to prevent the unlawful conduct; and/or failed to prevent further harm to Plaintiffs.

15. Plaintiffs are truly ignorant of the true names and capacities of Defendants DOES 1 through 50, inclusive, and/or are truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability.

### III.
### FACTS

16. At all times relevant to this complaint, Plaintiff James Adams, a federal agent with Immigration and Customs Enforcement (ICE), was involved in a romantic relationship with Mary Beltran.

17. After one year of dating, Mr. Adams, Ms. Beltran, and Ms. Beltran's three children from a prior marriage, moved in together.

18. On March 20, 2015, Ms. Beltran's son, Roman, Plaintiff, and Ms. Beltran had an argument. Ms. Beltran called the police.

19. Roman effected a Citizen's Arrest of Plaintiff for 243(A), battery on a person.

20. On May 12, 2015, Mr. Adams was charged with battery under California Penal Code section 242.

21. Roman later admitted that the statements he made to police were not true. He was mad at the time, and did not realize how much trouble he could cause Mr. Adams.

22. On June 8, 2015, Roman completed a document to drop the charges.

23. On June 12, 2015, Ms. Beltran filled out a non-prosecution form. She stated that they were going to work their problems out as a family.

24. On June 8, 2015, the Superior Court of the County of San Diego issued a no negative contact order.

25. The Honorable Matthew C. Braner presided over the case. Judge Braner ordered that Mr. Adams be allowed to retain his firearms including both his

- 4 -

service weapons for his job with ICE, and Mr. Adams's own personal firearms he kept locked in a safe in his home.

26. Defendant Deputy District Attorney Ms. Myers submitted the order or protection to the Court which forbade Mr. Adams from possessing firearms, in direct contradiction to the Court's order.

27. The California Department of Justice, Firearms Bureau, received a referral from the California Department of Justice, Armed Prohibited Persons System, for Mr. Adams.

28. The California Department of Justice had on record that Mr. Adams still had registered firearms after the June 8, 2015 protective order.

29. Defendant Sotelo reviewed the California Restraining Order System and local law enforcement databases to determine if the firearms had been confiscated.

30. The California Department of Justice sought to obtain a search warrant based on the erroneous June 8, 2015 order of protection.

31. The California Department of Justice failed to properly ascertain and verify that Mr. James was lawfully entitled to possess firearms.

32. On July 14, 2015, at 3:00AM, Defendant Special Agents of the California Department of Justice Sotelo, Limon, Wagner, Ramos, and Cedusky executed the search warrant.

33. Mr. Adams and Ms. Beltran were awakened by loud banging on the door.

34. Mr. Adams raced downstairs to the door. He opened the door with his left hand, and was immediately pulled out of his home by his right arm. He was pulled so hard out of his house that he almost came off his feet.

35. Mr. Adams's right arm was forced behind his back, and his head and neck were forced towards the ground.

36. The Defendants were yelling "California Department of Justice, we have a search warrant!"

37. Mr. Adams attempted to tell the Officer who grabbed him out of his home that he had a shoulder injury, a hernia, and that the Officer was hurting him.

38. The Officer did not heed Mr. Adams' statements, continued to use excessive force, and then handcuffed him.

39. Ms. Beltran was also grabbed and forced outside the house, and handcuffed.

40. Both Mr. Adams and Ms. Beltran had been in their undergarments when they were pulled outside of their home and handcuffed.

41. Defendants went into the house and ran upstairs with their guns drawn. Some of the Defendants carried M-4 automatic carbine rifles.

42. Moments later, Ms. Beltran's children were being escorted down the stairs at gunpoint.

43. Defendant Sotelo then told Mr. Adams that he had a search warrant because Mr. Adams had violated the protective order.

44. Mr. Adams tried to explain to Defendant Sotelo that Judge Braner had ordered in open Court that there was no such protective order.

45. Defendant Sotelo and another officer who appeared to be a lieutenant began asking for the combination to Mr. Adams's gun safe.

46. The Defendants began threatening Mr. Adams.

47. Mr. Adams requested to call his supervisor.

48. The Defendants told Mr. Adams that he could not use the phone unless he gave them the combination to his safe.

49. Ms. Beltran and the children were allowed to sit on the couch.

50. Mr. Adams had to stand in front of them in his underwear and t-shirt.

51. Ms. Beltran asked if she could put clothes on, and the Defendants denied her request.

52. For approximately one hour, Defendant Sotelo and the Lieutenant Officer repeatedly asked for the combination to the safe, and threatened to drill through it if Mr. Adams did not cooperate.

53. Ms. Beltran then stated that she would need to leave for work soon, and asked to use the phone to call into her job. Defendant Sotelo said that he would call her job for her.

54. Mr. Adams then asked if he could sit because his hernia was causing him pain.

55. Mr. Adams was not allowed to sit and his request was denied because he refused to give the combination to his safe.

56. Mr. Adams made a compromise and told the Defendants that he would give the combination to the safe if they would let Ms. Beltran get dressed and get ready for work.

57. Defendant Sotelo handed Mr. Adams a piece of paper and a pen to write down the combination.

58. A Defendant Officer and the Lieutenant Officer went upstairs and asked Ms. Beltran to open the safe. She told them to open it, so they opened the safe in front of Ms. Beltran.

59. Ms. Beltran was rushed out of the closet where the safe was located. She saw a Defendant Officer take out his cell phone and took pictures of the inside of the safe.

60. The Defendant Officers were upstairs by themselves for over an hour.

61. The Defendant Officers then yelled to another Officer to go get the camera from one of the vehicles outside.

62. Mr. Adams could hear the Officers moving things around upstairs.

63. Almost three hours after the Defendants arrived, Mr. Adams was allowed to put on pants and a sweatshirt.

64. Mr. Adams again requested to call his supervisor. Again his request was denied.

65. Mr. Adams then asked Defendant Sotelo to take off the handcuffs because it was hurting his combat related shoulder injury he sustained while serving in Iraq.

66. Defendant Sotelo added an additional pair of handcuffs to the one's that Mr. Adam's already had.

67. Mr. Adams was able to call his supervisor and his attorney at the time, approximately three hours after the Defendants had arrived.

68. Mr. Adams's attorney, Mr. Jamahl Kearsy, was not able to get any information from the Defendants. The Lieutenant Officer refused to speak to Mr. Kearsy.

69. Defendant Sotelo refused to tell Mr. Kearsy where Mr. Adams was going to be taken.

70. Throughout the Defendant's execution of the search warrant, Mr. Adams was cooperative and compliant with the Officers' requests. Mr. Adams also told the Defendants that he had ammunition and duty gear in his vehicle.

71. Ms. Beltran was allowed to leave for work around 5:45am.

72. At approximately 6:00am, Mr. Adams was taken outside and had to stand on the sidewalk in front of his neighbors who were leaving for work.

73. Mr. Adams felt humiliated to be seen like this in front of his neighbors.

74. Mr. Adams was placed in the front seat of the Defendant's vehicle. Defendant Sotelo went up to the window and told Mr. Adams that he was being charged with a felony.

75. Defendant Sotelo stated that he would have to read Mr. Adams his rights because he was "lawyered up."

76. Defendant Sotelo read Mr. Adams his rights and then asked if he owned a magnetic bullet.

77. Mr. Adams replied that he owned two.

78. Defendant Sotelo stated that having one of them on his AR-15 makes it an illegal assault weapon.

79. On the drive to San Diego Central Jail, the car was driven in an erratic behavior.  The driver would make sharp turns and slammed on the breaks.

80. Because Mr. Adams was handcuffed with his hands behind his back, the erratic driving caused him to go head and chest first into the dashboard multiple times.

81. Mr. Adams was charged with possession of an altered assault rifle.

82. As a result from the erroneous search warrant, Mr. Adams's firearms have been unlawfully seized.

83. Defendant Myers engaged in communication with the California Department of Justice Officers on at least two different occasions, July 20 and August 3 of 2015.

84. The situation has caused Mr. Adams tremendous stress that have led to physical manifestations.

85. Mr. Adams was hospitalized from January 8, 2016 to January 11, 2016 for pneumonia and Type II diabetes.

**FIRST CAUSE OF ACTION**
**EXECUTION OF A WARRANT OBTAINED IN VIOLATION OF *FRANKS V. DELAWARE* (42 U.S.C. § 1983)**
**(BY PLAINTIFF AGAINST DEFENDANT MYERS, SOTELO, LIMON, WAGNER, RAMOS, AND DOES 1 - 50)**

86. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

87. Sotelo and DOES 1 - 50 obtained a search warrant for the search of the home of James Adams III.

88. Defendants then executed this search warrant, seizing property that belonged to James Adams III.

89. It is clearly established law that a search warrant obtained by the inclusion of false statements, known to be false, or made with reckless disregard, negates probable cause, and is an invalid warrant.

90. Had Defendants Sotelo, or DOES 1-50 acted with due diligence in determining the proper protective order contents, there would have been no probable cause in the warrant application to justify a search of the Adams's home. No reasonable judicial official would have authorized the search warrant that Sotelo and DOES 1-50 requested.

91. The execution of this wrongly obtained warrant violated the Fourth Amendment rights of James Adams III.

92. This violation of their Fourth Amendment rights under color of state law by Sotelo, Limon, Wagner, Ramos, Cedusky, Chudy, Camacho and DOES 1-50 caused damages, including shock, stress, humiliation, pain, and suffering.

**SECOND CAUSE OF ACTION**
**WRONGFUL DETENTION OF SEIZED PROPERTY (42 U.S.C. § 1983)**
**(BY PLAINTIFF AGAINST DEFENDANT SOTELO, LIMON, WAGNER, RAMOS, AND DOES 1 - 50)**

93. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

94. It is clearly established law that the continued detention of illegally seized items constitutes a Fourth Amendment violation.

95. In this case, Sotelo, Limon, Wagner, Ramos, Cedusky, Chudy, Camacho, and DOES 1 - 50 illegally detained the seized property of James Adams III.

96. This detention occurred from July 14, 2015 until the present date.

97. La Dell and DOES refused to return the seized property despite multiple requests from James Adams III and his counsel.

98. La Dell and DOES refused to return the seized property even though Judge Braner's statements in open Court supersede and directly contradict the protective order issued by Defendant Myers.

99. The wrongful and prolonged detention of Adams's property violated the Fourth Amendment, and caused damages to Plaintiff.

### THIRD CAUSE OF ACTION
### EXCESSIVE FORCE (42 U.S.C. § 1983)
### (BY PLAINTIFF AGAINST DEFENDANTS SOTELO AND DOES 1 - 50)

100. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

101. 42 U.S.C. § 1983 provides in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress.

102. Plaintiff had a firmly established right under the Fourth Amendment to be free from official infliction of excessive force.

103. Plaintiff posed no threat to Defendants Sotelo and Does 1-50 when they used excessive force.

104. Defendant Sotelo's use of force in forcibly yanking Plaintiff out of his home and handcuffing Plaintiff in a painful and extreme manner when Plaintiff presented no threat to anyone, was unnecessary and excessive.

105. Defendants acted under color of state law in violating Plaintiff's rights.

106. Defendants, acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that use of force in these circumstances was illegal under clearly established law.

107. The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, and further damages according to proof at the time of trial.

108. The conduct alleged herein was done in deliberate or reckless disregard of and plaintiff's constitutionally protected rights; justifying the award of exemplary damages against defendant officers in an amount according to proof at the time of trial in order to deter the defendant from engaging in similar conduct and to make an example by way of monetary punishment. Plaintiff is also entitled to attorneys' fees and costs of suit herein.

**FOURTH CAUSE OF ACTION**
**CONVERSION**
**(BY PLAINTIFF AGAINST DEFENDANT SOTELO, LIMON, WAGNER, RAMOS, AND DOES 1 - 50)**

109. Plaintiff realleges all prior paragraphs of this complaint and incorporate the same herein by this reference.

110. Sotelo's conduct constituted conversion. Sotelo knew that James Adams III was the owner with the right to possess the firearms, which were seized due to Sotelo's obtaining a warrant through negligence and recklessness, and by seizing items based upon an erroneous warrant.

111. Those actions wrongfully interfered with Plaintiffs' property and possessory interests in the property illegally retained by Defendants.

112. Those actions caused Plaintiff damages.

# FIFTH CAUSE OF ACTION
## NEGLIGENCE
### (BY PLAINTIFF AGAINST DEFENDANT MYERS, LIMON, WAGNER, RAMOS, CEDUSKY, CHUDY, CAMACHO AND DOES 1 - 50)

113.   Plaintiff realleges all prior paragraphs of this complaint and incorporate the same herein by this reference.

114.   Myers negligently submitted a protective order that directly contradicted Judge Braner's Orders.  Myers had knowledge that Mr. Adams was permitted to lawfully possess his ICE service weapons and his own personal firearms.

115.   Myers had multiple opportunities to rectify the erroneous protective order and failed to do so.

116.    Sotelo, Limon, Wagner, Ramos, Cedusky, Chudy, Camacho and DOES 1 - 50 owed a duty of care to Plaintiffs to avoid inflicting harm on them by violating the standard of care applicable to a peace officer who is required to comply with the Constitutional constraints on illegal searches, seizures and detentions of property.

117.   Sotelo and Defendants were required to conduct himself in an appropriate and professional manner to avoid the gratuitous infliction of harm and pain upon the Plaintiffs set forth herein.

141.   Sotelo and Defendants violated that standard.

142.    Myers, Sotelo, and the Defendant's conduct, in breach of the standard of reasonableness, caused harm to Plaintiffs.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment as follows:

1) For compensatory general and special damages in an amount in accordance with proof.
2) For punitive damages.

3)  For reasonable attorneys' fees, expenses and costs of suit.

4)  For any other relief that is just and proper.

## **JURY DEMAND**

Pursuant to the Seventh Amendment of the U.S. Constitution and Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial by this action.

DATED: August 26, 2016                    Respectfully submitted,

                                          IREDALE AND YOO, APC

                                          s/ *Eugene Iredale*
                                          Eugene G. Iredale
                                          Julia Yoo
                                          Grace Jun
                                          Attorney for Plaintiffs