# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ADAMS,<br><br>                          Plaintiff,<br><br>v.<br><br>RICHARD SOTELO, ERNEST LIMON,<br>and DOES 1-50,<br><br>                          Defendants. | Case No.:   16cv2161 W (NLS)<br><br><br>**ORDER GRANTING IN PART AND<br>DENYING ING IN PART<br>DEFENDANTS' MOTION TO<br>DISMISS [DOC. 10]** |

Defendants California Department of Justice Special Agent Richard Sotelo and Special Agent Supervisor Ernesto Limon move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff opposes.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1).  For the reasons that follow, the Court **GRANTS** Defendants' motion [Doc. 10] with regard to Defendant Limon as to the first cause of action, and **GRANTS** the motion as to Plaintiff's fourth cause of action for conversion. The Court **DENIES** Defendants' motion to dismiss all other causes of action.

# I. BACKGROUND

Plaintiff James Adams is an Immigration and Customs Enforcement ("ICE") Agent. (*First Amended Complaint* ("FAC") [Doc. 3] ¶ 15.) Defendant Richard Sotelo is an agent with the California Department of Justice's ("DOJ") Bureau of Firearms, and Defendant Ernest Limon is Sotelo's supervisor. (*Id.* ¶ 11.)

Adams lived with his girlfriend, Mary Beltran, and her three children. (*FAC* ¶ 16.) On March 20, 2015, Adams, Ms. Beltran and her son, Roman, had an argument. (*Id.* ¶ 17.) Ms. Beltran called the police and Roman effected a citizen's arrest of Adams for battery. (*Id.* ¶¶ 17–18.) Adams was subsequently charged with battery under California Penal Code § 242. (*Id.* ¶ 19.)

Roman later admitted that his statements to police were not true, that he was angry at the time, and did not realize how much trouble he could cause Mr. Adams. (*FAC* ¶ 20.) On June 8, 2015, he completed a form dropping the charges. (*Id.* ¶ 21.) At a hearing the same day, San Diego Superior Court Judge Matthew C. Braner issued an order specifying that there be "no negative contact" between Adams and the Beltrans (the "Order"), but the Judge allowed Adams to retain his service weapon and personal firearms. (*Id.* ¶¶ 23, 24.) Judge Braner also declined to issue a protective order or a restraining order against Adams. (*Id.* ¶¶ 25, 33.) Four days later, Ms. Beltran filled out a non-prosecution form. (*Id.* ¶ 22.)

On July 13, 2015, Agent Sotelo received a referral from the DOJ's Armed Prohibited Persons System ("APPS") identifying Adams as the subject of a domestic violence ("DV") restraining order and corresponding prohibition of firearms and ammunition. (*FAC* ¶¶ 31, 32.) After receiving the referral, Sotelo visited Adams' home and spoke with Ms. Beltran. (*Id.* ¶ 35.) She informed Sotelo that there was no outstanding DV order against Adams, nor any prohibition on his firearms. (*Id.* ¶¶ 35, 41; *Opp'n* [Doc. 11] 3:12–13.)

Later that evening, Agent Sotelo obtained a search warrant for Adams' residence from San Diego Superior Court Judge William Dato. (*FAC* ¶¶ 29, 30, 35.) Sotelo's

2

sworn telephonic declaration stated that he received the APPS referral, which identified Adams as being prohibited from possessing firearms or ammunition, pursuant to a domestic violence restraining order.  (*Id.* ¶¶ 31, 32.)  Sotelo did not disclose his conversation with Ms. Beltran to Judge Dato.  (*Id.* ¶¶ 29–33.)

At approximately 3:00 a.m. the next morning, Sotelo, Supervisor Limon, and other unknown DOJ Agents executed the search warrant at Adams' home.  (*FAC* ¶ 47.)  Adams presented Sotelo with a copy of Judge Braner's Order and insisted that no restraining order existed; however, Adams alleges, "[d]espite seeing the document, Sotelo insisted on executing the warrant."  (*Id.* ¶¶ 42–44.)  Adams also contends that Sotelo refused his requests to contact the prosecutor or the court to verify the information.  (*Id.* ¶ 45.)  Instead, Defendants detained Adams, Ms. Beltran and her children at gunpoint.  (*Id.* ¶¶ 53–56.)  Adams also alleges that Defendants aggressively handcuffed and detained him for approximately three hours until they transported him to the San Diego Central Jail, and that Defendants handcuffed Ms. Beltran for approximately one hour until Adams revealed the combination to his gun safe.  (*Id.* ¶¶ 47, 49–54, 64–66, 69, 85–90.)

On January 14, 2016, Adams filed an administrative claim with the California Victim Compensation and Government Claims Board against Sotelo, Limon and others.  (*See Def.'s RJN* [Doc. 10-2] Exhibit 1.)  Presumably the claim was denied.

On August 26, 2016, Adams filed this lawsuit against Defendants, the County of San Diego, the California DOJ, and Deputy District Attorney Myers, alleging that the warrant was obtained in violation of <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), and asserting claims for wrongful detention, refusal to return seized property and excessive force under 42 U.S.C. § 1983, and a state-law negligence claim. (*Complaint* [Doc. 1].) On September 19, 2016, Adams filed the FAC, removing all defendants except for Sotelo and Limon, and adding state-law conversion, battery, and Bane Act claims.  Defendants now seek to dismiss the FAC arguing it fails to allege sufficient facts to support Adams' claims, and that qualified immunity applies to the <u>Franks</u>' violation and wrongful-detention claims.  (*P&A* [Doc. 10-1].)  Adams opposes the motion. (*Opp'n* [Doc. 11].)

3

## II. LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

## III. DISCUSSION

### A. The FAC's factual allegations support a *Franks'* violation claim.

Adams' first cause of action alleges a claim for violation of Franks v. Delaware, 438 U.S. 154 (1978), based on the contention that the search warrant was invalid because it was "obtained by the inclusion of false statements, known to be false, or made with reckless disregard…." (*FAC* ¶ 95.) Defendants dispute this contention, and argue the

4

cause of action must be dismissed because Adams fails to "identify any statement by Sotelo that was not derived from the APPS database information he, or any other law enforcement officer, would rely upon…." (*Opp'n*. 8:7–9.)

The central problem with Defendants' argument is it ignores the information Sotelo received from Ms. Beltran—one of the victims of Adams' alleged crime. The FAC alleges that before Sotelo obtained the search warrant, he talked to Ms. Beltran, who informed him that "there was no domestic violence order, and that Mr. Adams was not prohibited from possessing firearms." (*FAC* ¶¶ 35, 41; *Opp'n* 3:12–13.) In applying for the search warrant later that evening, Sotelo failed to disclose this information to Judge Dato. (*Id.* ¶¶ 29–33.) Based on these facts, the issue is not—as Defendants suggest—whether the law required "some sort of 'further investigation' before" Sotelo obtained the search warrant. Rather, the issue is whether Sotelo was obligated to provide Judge Dato with the information obtained from the alleged victim of the crime, which likely negated probable cause for the search warrant.

"Prior to a search there is an obligation to bring to the attention of an issuing magistrate any change of circumstance based upon additional or corrective information known to government agents, if the new information could reasonably have affected the judicial officer's decision had it been made known to him before issuance of the warrant." United States v. Morales, 568 F. Supp. 646, 649 (E.D.N.Y. 1983). For example, in U.S. v. Bowling, 900 F.2d 926 (6th Cir. 1990), while one group of officers was obtaining a warrant, a second group was waiting outside the defendants' home. At some point, defendants consented to a search by the second group of officers, which was performed hastily and revealed nothing incriminating. When the first group of officers later arrived with the search warrant, the second group informed them about the unsuccessful search. The officers then executed the warrant without first disclosing to the magistrate that an initial search had already been conducted.

On appeal, defendants argued that the unsuccessful initial search negated probable cause and that it should have been disclosed to the magistrate judge before the warrant

5

was executed.  The government responded that the determination of whether the second search was in good faith should be based on information known when the warrant was issued, and the information obtained after the warrant was issued did not have to be disclosed to the magistrate judge.  Id. at 931.

In rejecting the government's argument, the Sixth Circuit began by explaining that in Johnson v. United States, 333 U.S. 10 (1948), the Supreme Court "emphatically cautioned that in the absence of urgent circumstances officers should not rely on their own discretion, but should instead resort to a neutral magistrate, to determine whether probable cause to conduct a search exists."  Bowling, 900 F.2d at 933.  The court then continued,

> Although *Johnson*'s admonition speaks specifically to the situation in which officers conduct a *warrantless* search, we think it is equally applicable to cases in which officers possess a warrant but are alerted to circumstances which affect the probable cause for its execution.  The Fourth Amendment's protection against unreasonable searches and seizures would be an incomplete and highly manipulable safeguard if a neutral magistrate could not play the same impartial role in assessing continuing probable cause that he plays in determining probable cause to issue the warrant in the first place.  Because no exigent circumstances are presented by the facts of this case, the officers should have refrained from the second search until a neutral magistrate determined that probable cause continued to exist.

Id.; see also United States v. Jacobs, 986 F.2d 1231 (8th Cir. 1993) (execution of search warrant not reasonable, in part, because officers failed to provide the magistrate judge with information obtained after warrant was issued "which would have undercut the warrant's validity."); United States v. Marin-Buctrago, 734 F. 2d 889, 894 (2d Cir. 1984) ("[w]hen a definite and material change has occurred in the facts underlying the magistrate's determination of probable cause, it is the magistrate, not the executing officers, who must determine whether probable cause still exists. Therefore, the magistrate must be made aware of any material new or correcting information. The duty to report new or correcting information to the magistrate does not arise unless the information is material to the magistrate's determination of probable cause."); State v.

Maddox, 67 P.3d 1135 (Wash. App. Div. 2, 2003) (concluding that probable cause must be redetermined "when information acquired after issuance but before execution would, if believed, negate probable cause").

Here, the FAC alleges that Sotelo failed to disclose to Judge Dato information provided by the alleged victim—Ms. Beltran—which arguably negated probable cause. Under the above cases, the information should have been provided to the judge even if the search warrant had already been issued. Given the absence of exigent circumstances, the Court finds the FAC's allegations are sufficient to support a Franks' violation.

## B. Defendants are not entitled to Qualified Immunity.

Defendants next argue that if the Court finds the search was unlawful, Defendants are nevertheless entitled to qualified immunity. (*P&A* 10:20–23.)

Qualified immunity shields government officials from liability for monetary damages unless the plaintiff establishes that (1) the conduct violated a constitutional right, and (2) the right was "clearly established" when the misconduct occurred. Pearson v. Callahan, 555 U.S. 223, 232, 236–42 (2009) (modifying the two-step inquiry in Saucier v. Katz, 533 U.S. 194 (2001), to allow courts discretion in deciding which prong to address first depending on the facts of the particular case). "Clearly established" means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right" with careful consideration to the facts of the particular case. Anderson v. Creighton, 483 U.S. 635, 640 (1987). In determining whether a right is clearly established, courts "may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." Prison Legal News v. Lehman, 397 F.3d 692, 702 (9th Cir. 2005); Sorrels v. McKee, 290 F.3d 965, 970 (9th Cir. 2002) (looking to "decisions of our sister Circuits, district courts, and state courts" in evaluating if law was clearly established).

Defendants' contention that they are entitled to qualified immunity is based on the theory that the FAC fails to set forth a Franks' violation or, if it does, the law was not

7

clearly established at the time.  (*P&A* 10:20–25.)  As discussed in the previous section, the FAC's allegations sufficiently allege a <u>Franks</u>' violation.  Additionally, case law clearly established that Sotelo's failure to provide Judge Dato with the information obtained from Ms. Beltran violated Adam's Fourth Amendment right.  Accordingly, Defendants are not entitled to qualified immunity.

### C.    The FAC does not allege a *Franks'* violation against Defendant Limon.

Defendants argue Adams' <u>Franks</u>' violation claim against Limon should be dismissed because "[t]here are no allegations in the FAC that Special Agent Supervisor Limon had any knowledge or role in obtaining the warrant, and no allegation that Limon made any type of false statement related to the warrant."  (*P&A* 11:10–15.)  Adams' opposition responds that the FAC "has alleged Defendant Limon, a supervisor, personally participated in obtaining the search warrant, [and] executing the search warrant at Plaintiff's home…."  (*Opp'n* 16:13–16.)

Liability under § 1983 may only be imposed "on those who '*shall subject, or cause to be subjected*, any person... to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States."  <u>Palmer v. Sanderson</u>, 9 F.3d 1433, 1438 (9th Cir. 1993) (citing <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 691–92 (quoting 17 Stat. 13)).  "Thus,... Congress did not intend to 'impose liability vicariously on [employers or supervisors] solely on the basis of the existence of an employer-employee relationship with a tortfeasor."  <u>Id.</u> (citing <u>Monell</u>, 436 U.S. at 2036).

Here, the FAC alleges in conclusory fashion that "Defendant Ernest Limon was the assigned supervisor, who participated with, oversaw, approved, and ratified the conduct of Sotelo as set forth herein."  (*FAC* ¶ 11.)  However, there are no factual allegations in the FAC supporting an inference that Limon personally "participated" in obtaining the search warrant or that he was even aware of the information Ms. Beltran provided Sotelo before the search warrant was executed.  Accordingly, the Court finds the FAC fails to state a <u>Franks</u>' violation claim against Limon.

8

**D.** **The FAC sets forth a claim for wrongful detention of seized property.**

Defendants argue that because Adams has not alleged sufficient facts showing the warrant was unlawfully issued, his claim for wrongful seizure and detention of his firearms fails to meet the pleading standard. (*P&A* 11:18–22.) Because this Court has found the FAC sufficiently alleges a <u>Franks</u>' violation, Defendants' argument lacks merit.

**E.** **Adams' state-law causes of action.**

Defendants contend Adams' conversion and negligence causes of action must be dismissed because they were not presented in his administrative claim. The Court will evaluate the two causes of action separately.

**1.** **The California Tort Claims Act.**

The California Tort Claims Act requires an individual to file a written claim with the relevant public entity before bringing legal action for money damages. Cal. Gov't Code §§ 945.4, 905; <u>see</u> <u>Minsky v. City of Los Angeles</u>, 11 Cal. 3d 113 (Cal. 1974). The written claim must state, among other things:

> (c) the date, place and other circumstance of the occurrence or transaction which gave rise to the claim asserted; (d) a general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; (e) the name or names of the public employee or employees causing the injury, damage, or loss, if known….

Cal. Gov't Code § 910. In <u>Minsky</u>, the California Supreme Court explained that "the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim" and thus, "a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'" <u>Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Authority</u>, 34 Cal. 4th 441, 502 (quoting <u>Shoemaker v. Myers</u>, 2 Cal.App.4th 1407, 1426 (1992)).

### 2. Adams failed to comply with the Tort Claims Act with respect to his conversion cause of action.

In response to Defendants' argument that Adams failed to satisfy the Tort Claims Act for the conversion cause of action, Adams contends the Act does not apply: "To the extent Defendants argue that Plaintiff failed to comply with the claims presentation requirement, Plaintiff's conversion claim was not subject to the Tort Claims Act under controlling state law." (*Opp'n* 17:23–26.) In support of his argument, Adams cites <u>Minsky</u>.

In <u>Minsky</u>, the California Supreme Court evaluated whether the Tort Claims Act applies "to an action by an arrestee for the return of property taken by local police officers at the time of arrest and wrongfully withheld following the disposition of criminal charges." <u>Id.</u> 11 Cal. 3d at 116–117. Although the court held the Act does not apply to an action for the return of property, it stated that the administrative requirement applies to a claim for "money or damages." <u>Id.</u> at 121–22.

Here, the FAC admits Adams' property was returned in "March of 2016." (*FAC* ¶ 102.) Because Adams' conversion cause of action appears to seek only monetary damages, he was required to comply with the Tort Claims Act. However, the administrative claim does not allege facts indicating that Adams was seeking monetary damages for the seizure of his weapons. Accordingly, Adams' conversion cause of action must be dismissed.

### 3. The facts underlying Adams' negligence and Bane Act causes of action were included in his administrative claim.

Defendants argue Adams' negligence and Bane Act causes of action should be dismissed because he fails to "identify a single word in his government claim that would place the State on notice of a claim for negligence" and it "does not use the term 'Bane Act' or refer in any manner to Cal. Civil Code § 52.1." (*Reply* 13:16–20, 16:3–5.) The Court disagrees.

10

In <u>Stockett v. Ass'n of Cal. Water Agencies Join Powers Ins. Auth.</u>, 34 Cal.4th 441, 503–04 (2004), plaintiff filed a government claim alleging he was wrongfully terminated for supporting his female co-worker's sexual harassment complaints against company officials. In the subsequent lawsuit, plaintiff amended his complaint to add conflict of interest and First Amendment protected speech theories. The California Supreme Court rejected defendants' contention that plaintiff's amendment violated the Tort Claims Act by failing to put defendants on notice of the additional wrongful termination theories. <u>Id</u>. at 503. The court reasoned that "[w]here the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint." <u>Id</u>. Stockett's claim "stated the date and place of his termination", named the "officers and agents he believed responsible, and generally stated the 'circumstances' of his termination." <u>Id</u>. The court emphasized that "the additional theories pled in Stockett's amended complaint did not shift liability to other parties or premise liability on acts committed at different times or places." <u>Id</u>. at 503–04.

Here, similar to the FAC, Adams' administrative claim identified "CADOJ employees including but not limited to Sotelo, Limon, Wagner, Ramos and Sedusky" as the employees against whom the claim was being filed. (*Def.'s RJN* Exhibit 1 at 1.) The addendum to the administrative claim then begins by explaining that Judge Braner's Order prohibited "negative contact," but allowed Adams to retain his firearms. (*Id.* at 3.) The addendum then continues:

> Upon information and belief, after receiving a tip from DOA Meyers, The California Department of Justice [CADOJ], Firearms Bureau received a referral from CADOJ APPS [Armed Prohibited Persons System] for James Adams. CADOJ discovered that firearms were still registered to him despite the June 8, 2015 order of protection. (Agent Sotelo conducted a query of the California Restraining Order System and of local SD law enforcement databases. He also checked with Chula Vista PD to see if they had confiscated firearms from Mr. Adams.) The DOJ sought to obtain a search warrant based on the erroneously submitted order of protection. That is, the search warrant was predicated on the error that Mr. Adams was prohibited

11

from keeping his firearms. Mr. Adams was not actually prohibited from possessing his firearms so the weapons remained registered to him. The search was intended to find evidence that he was a prohibited person in possession of firearms. The CADOJ failed to follow-up and accurately verify whether or not Mr. Adams was permitted to retain his firearms–a reading of the transcript would have answered that query–and obtained a search warrant for Mr. Adams's residence at 774 Callecita Aquilla Sur, Chula Vista, CA, 91911, in violation of *Franks v. Delaware*.

(*Id.* at 3–4.) The addendum also provides details regarding Defendants alleged use of excessive force against Adams, including "giving" Adams a "rough ride" while driving him to the police station. (*Id.*)

Contrary to Defendants' argument, these allegations provided the State with notice sufficient to investigate and evaluate the claims. Specifically, the claim notified the State of the fundamental acts or failures, which included that the "search warrant was predicated on the error that Mr. Adams was prohibited from keeping his firearms" and the excessive force and intimidation directed at Adams. Accordingly, the Court finds the negligence and Bane Act causes of action were sufficiently reflected in Adams' administrative claim.[1]

### F.    The FAC sets forth a Bane Act cause of action.

Defendants also argue Adams' Bane Act cause of action should be dismissed because, aside from his "constitutional claim for excessive force (and parallel state claim for battery)", the FAC "does not allege that some other constitutional right was interfered with as a result of any alleged 'force'." (*P&A* 15:12–15.)

Section 52.1 of the California Civil Code permits a party to bring an action against

---

[1] Defendants also argue the negligence claim should be dismissed because they are immune under Cal. Civil Code §§ 262.1 and 43.55. This argument, however, is predicated on the contention that the "search, seizure, and property detention. . . were constitutional and lawful." (*P&A* 14:8–9.) Because the Court has found the FAC states a <u>Franks</u>' violation, Defendants' claim for immunity under California law lacks merit.

12

any person who:

> interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of th[e] state…

Cal. Civ. Code § 52.1(b). In <u>Simmons v. Superior Court</u>, 7 Cal. App. 5th 1113 (Ct. App. 2016), the court observed that "the majority of federal district courts in California have held that where Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, *there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force*." <u>Id</u>. at 1126 (emphasis added) (*Opp'n* 19:7–11.)

In light of <u>Simmons</u>, Defendants concede in their Reply that Adams "can state a Bane Act claim for excessive force…", but contend that the "claim should be amended to specify that it is limited to excessive force within the meaning of the Fourth Amendment, rather than to unspecified '*rights secured by the United States Constitution or state or federal law*.'" (*Reply* 14:5–10, italics added.) In essence, Defendants now appear to request that the Court strike the italicized language from Adams' Bane Act cause of action. (*Id.* 14:9–10.)

Defendants, however, filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), not a motion to strike language under Rule 12(f). (*See Notice* [Doc. 10] 1:24–27.) As a result, Adams did not have an opportunity to address Defendants' request in the opposition. <u>See also Starline Windows Inc. v. Quanex Building Products Corp.</u>, 2016 WL 3144060 (S.D. Cal. 2016) ("It is well established that a court 'need not consider arguments raised for the first time in a reply brief.'") (quoting <u>Zamani v. Carnes</u>, 491 F. 3d 990, 997 (9th Cir. 2007)). Moreover, Rule 12(f) provides that a court may strike language that is "redundant, immaterial, impertinent, or scandalous...." At this point, Defendants have failed to establish that the challenged language fits within this standard. For all these reasons, the Court will deny Defendants' request.

13

**IV.  CONCLUSION & ORDER**

    For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion [Doc. 10], and **ORDERS** as follows:

1. Defendant Limon is dismissed with leave to amend as to the first cause of action.

2. The fourth cause of action for conversion is dismissed without leave to amend.

3. Defendants' motion is denied as to all other causes of action.

4. The second amended complaint, if any, must be filed on or before **June 5, 2017**.

    **IT IS SO ORDERED.**

Dated:  May 22, 2017

_____
Hon. Thomas J. Whelan
United States District Judge

14