EUGENE G. IREDALE: SBN 75292
JULIA YOO:  SBN 231163
GRACE JUN, SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525   FAX: (619) 233-3221

Attorneys for Plaintiff James Adams

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ADAMS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>RICHARD SOTELO, ERNEST LIMON, and DOES 1-50<br><br>　　　　Defendants. | CASE NO.: 3:16-cv-2161<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1)   Execution of a Warrant Obtained In Violation of *Franks v. Delaware* (438 U.S. 154 (1978))<br>2)   Wrongful Detention of, and Refusal to Return, Seized Property (42 U.S.C. § 1983)<br>3)   Excessive Force (42 U.S.C. § 1983)<br>4)   Negligence<br>5)   Battery<br>6)   Violation of Cal. Civ. Code § 52.1 (Bane Act)<br><br>**JURY TRIAL IS HEREBY DEMANDED PURSUANT TO FRCP RULE 38** |

COMES NOW Plaintiff, James Adams through his attorneys of record, and alleges and complains as follows:

## I.
## GENERAL ALLEGATIONS

1. This is an action under 42 U.S.C. § 1983 to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States. This action involves state law causes of action as well.

2. Jurisdiction is based upon the existence of a federal question, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4).

3. This Court has supplemental jurisdiction over any pendent state law claims under 28 U.S.C. § 1367(a).

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of California because the acts or omissions which form the basis of the Plaintiff's claims occurred in San Diego County, within the Southern District of California.

5. Plaintiffs have complied with Cal. Gov. Code §§ 800 et seq.

6. Doe No. 1 was the driver of the car in which Mr. Adams was transferred from his home to the County Jail. Plaintiff will amend to specifically name her when her identity is discovered.

7. At all times relevant to this complaint, Defendants DOES 2-25 were police officials and other agents of the CALIFORNIA DEPARTMENT OF JUSTICE, Firearms Bureau. At all times relevant hereto, these defendants were acting in their professional capacity.

8. At all times relevant to this complaint DOES 26 - 50 were official agents and employees of other law enforcement and prosecution agencies. At all times relevant hereto DOES 26 - 50 were acting in their professional capacity.

9. Plaintiffs are ignorant of the true names and capacities of DOES 1 - 50 and/or the facts giving rise to their liability and will amend this complaint once their identities as well as the facts giving rise to their liability have been ascertained.

10. Defendants, including DOES 1 - 50, were the agents, servants and employees of each other and of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer. Each of the defendants had approved or ratified the actions of the other defendants, thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

## II.
## PARTIES

11. Plaintiff James Adams is a 47 year old resident of the city of Chula Vista. He is employed as an Immigration and Customs Enforcement (ICE) Agent.

12. At all times relevant to this complaint, Defendant Richard Sotelo was an agent with the California Department of Justice Firearms Bureau. Defendant Ernest Limon was the assigned supervisor, who participated with, oversaw, approved, and ratified the conduct of Sotelo as set forth herein. Doe No. 1 is believed to be a Special Agent of the California Department of Justice. She was the person driving the car which transported Mr. Adams after his arrest. When Plaintiff learns her true name, he will amend the complaint to include it.

13. Plaintiff is informed and believes that at all relevant times, each Defendant acted within the scope of agency or employment.

14. Plaintiff is informed and believes that each of the Defendants caused, and is responsible for the below-described unlawful conduct and resulting injuries in that each of the Defendants participated in the unlawful conduct or acted jointly with others who did so; authorized, acquiesced in or set in motion actions

that led to the unlawful conduct; failed to take action to prevent the unlawful conduct; and/or failed to prevent further harm to Plaintiffs.

15. Plaintiffs are truly ignorant of the true names and capacities of Defendants DOES 1 through 50, inclusive, and/or are truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability.

## III.
## FACTS

16. At all times relevant to this complaint, Plaintiff James Adams, a federal agent with Immigration and Customs Enforcement (ICE), was involved in a romantic relationship with Mary Beltran.

17. After one year of dating, Mr. Adams, Ms. Beltran, and Ms. Beltran's three children from a prior marriage, moved in together.

18. On March 20, 2015, Ms. Beltran's son, Roman, Plaintiff, and Ms. Beltran had an argument. Ms. Beltran called the police.

19. Roman effected a Citizen's Arrest of Plaintiff for simple battery.

20. On May 12, 2015, Mr. Adams was charged with battery under California Penal Code section 242.

21. Roman later admitted that the statements he made to police were not true. He was angry at the time, and did not realize how much trouble he could cause Mr. Adams.

22. On June 8, 2015, Roman completed a document to drop the charges.

23. On June 12, 2015, Ms. Beltran filled out a non-prosecution form. She stated that they were going to work their problems out as a family.

24. The Honorable Matthew C. Braner presided over a hearing on June 8, 2015. Judge Braner specifically ordered that Mr. Adams be allowed to retain his firearms including both his service weapons for his job with ICE, and Mr. Adams's own personal firearms that he kept locked in a safe in his home.

25. During the June 8, 2015 hearing, Superior Court Judge Braner specifically declined to issue an order of protection, or a restraining order against Mr. Adams.

26. Although the Deputy District Attorney had requested a protective order and an order divesting Mr. Adams of firearms, the Judge specifically declined to enter such orders. He did enter a "no negative contact" order.

27. A "no negative contact" order is not a criminal protective order; it is not a domestic violence restraining order. It is not an order issued pursuant to Penal Code § 136.2.

28. Mr. Adams was given a copy of a court document, which was interlineated with the words "no negative contact" and had Xed out the provisions which prohibited contact with the relevant parties.

29. Richard Sotelo, an agent of the California Department of Justice, Bureau of Firearms, obtained a search warrant to search the home where Mr. Adams lived with Mary Beltran.

30. Sotelo obtained the warrant by making deliberately false statements, statements made with reckless disregard of the truth or falsity and through material omissions of fact. Superior Court Judge, William Dato issued the warrant based on these false statements and material omissions.

31. In his sworn telephonic declaration, Sotelo stated that on July 13, 2015, he received a "referral" from the California Department of Justice Armed Prohibited Persons System, known as the "APPS."

32. Sotelo claimed that the APPS "referral" identified James Adams as being prohibited from possessing firearms or ammunition, pursuant to a "domestic violence restraining order."

33. Sotelo's assertion was false. There was no domestic violence restraining order in effect. Judge Braner had specifically refused to issue any

protective order or restraining order. The only order was that there be "no negative contact."

34. Sotelo's assertion that Mr. Adams was prohibited by a domestic violence restraining order was made with knowledge of falsity or with reckless indifference to whether it was true or false.

35. On July 13 at approximately 8:30 p.m. Defendants Sotelo and Limon travelled to 774 Callecita Aquilla Sur, Chula Vista, CA.

36. There they spoke to Mary Beltran. Ms. Beltran informed them that Mr. Adams was in Rhode Island, visiting his mother who was ill.

37. Sotelo, the presence of Limon, asked Mary Beltran questions regarding Mr. Adam's firearms in the home.

38. Mary Beltran informed both Sotelo and Limon that Mr. Adams had no outstanding restraining order against him.

39. Ms. Beltran explained that Mr. Adams was to return shortly to Chula Vista; that he was living with her in that home; Mr. Adams' flight had been delayed, but that Mr. Adams would be arriving home in the early morning hours.

40. Mary Beltran further told Sotelo and Limon that the judge in Mr. Adams' case had ordered that he be permitted to possess his firearms, including his firearms in the home which were held in a locked safe.

41. Sotelo asked if Ms. Beltran had access to the safe, and requested permission to search the home.

42. Ms. Beltran declined to give consent to search without a warrant.

43. Thereafter defendants Limon and Sotelo, both aware of the information provided by Ms. Beltran, decided to obtain a search warrant and search the home.

44. Limon, as Sotelo's superior, counselled and assisted Sotelo in obtaining the telephonic search warrant at approximately 1:00 a.m.

45. Limon was aware that Sotelo did not disclose to the court the information from Ms. Beltran, that there was no domestic restraining or criminal protective order, and that Judge Braner had specifically authorized Mr. Adams to possess firearms.

46. Sotelo's assertion that there was an existing domestic violence restraining order and a court issued prohibition on possession of firearms was a material requisite for probable cause to justify the issuance of a warrant. Those assertions were false.

47. The APPS computer records, as well as another database, the "California Restraining Order System," are riddled with errors as a result of systemic negligence in the upkeep and verification of data. There is a high level of inaccurate information in these databases, a fact well known to law enforcement. These records should not be the basis for a search without verification of accuracy. Sotelo knew that the records were consistently in error, and not properly maintained.

48. Sotelo could have spoken to Deputy D.A. Monique Meyers to determine whether there was a valid domestic violence restraining order prohibiting Mr. Adams from possessing firearms. He did not.

49. Sotelo could have reviewed the court file and the order itself. He did not.

50. Sotelo could have reviewed the tape recording of the court proceedings of June 8, 2015. He did not.

51. Sotelo could have investigated Ms. Beltran's statements that there was no domestic violence order, and that Mr. Adams was not prohibited from possessing firearms. He did not.

52. After the entry into the home, Mr. Adams repeatedly told Sotelo that there was no restraining order, only a "no negative contact" order, and that the Judge had specifically allowed him to retain his firearms.

53. Mr. Adams asked Sotelo to review Mr. Adams's copy of the Court documents, which showed the striking out of the form, and the interlineation of the words "no negative contact."

54. Despite seeing the document, Sotelo insisted on executing the warrant. He did not report the information to the Court, although it would have corrected his earlier falsehood and negated probable cause. He did not seek legal counsel or additional information. Sotelo acted with the consent and assistance of Limon.

55. Mr. Adams asked Sotelo to please contact the prosecutor or telephone the Court. Sotelo refused.

56. Sotelo's execution of a warrant obtained in violation of *Franks v. Delaware*, 438 U.S. 154, without informing the Court of information negating probable cause, violated Mr. Adams's Fourth Amendment rights.

57. On July 14, 2015, at 3:00a.m., Defendant Special Agents of the California Department of Justice, Sotelo, Limon, and others executed the search warrant.

58. Mr. Adams and Ms. Beltran were awakened by loud banging on the door.

59. Mr. Adams raced downstairs to the door. He opened the door with his left hand, and was immediately pulled out of his home by his right arm. He was pulled so hard out of his house that he almost came off his feet.

60. Mr. Adams's right arm was forced behind his back, and his head and neck were forced towards the ground.

61. The Defendants were yelling "California Department of Justice, we have a search warrant!"

62. Mr. Adams attempted to tell the Officer who grabbed him out of his home that he had a shoulder injury, a hernia, and that the Officer was hurting him.

63. This Officer, believed to be Sotelo, did not heed Mr. Adams' statements, continued to use excessive force, and then handcuffed him.

64. Ms. Beltran was also grabbed and forced outside the house, and handcuffed.

65. Both Mr. Adams and Ms. Beltran had been in their undergarments when they were pulled outside of their home and handcuffed.

66. Moments later, Ms. Beltran's children were being escorted down the stairs at gunpoint.

67. Defendant Sotelo then told Mr. Adams that he had a search warrant because Mr. Adams had violated the protective order.

68. Mr. Adams explained to Defendant Sotelo that there was no such protective order.

69. Defendant Sotelo and another officer who appeared to be a lieutenant began asking for the combination to Mr. Adams's gun safe.

70. Mr. Adams requested to call his supervisor.

71. The Defendants told Mr. Adams that he could not use the phone unless he gave them the combination to his safe.

72. Ms. Beltran and the children were allowed to sit on the couch.

73. Mr. Adams had to stand in front of them in his underwear and t-shirt.

74. Ms. Beltran asked if she could put clothes on, and the Defendants denied her request.

75. For approximately one hour, Defendant Sotelo and Limon repeatedly asked for the combination to the safe, and threatened to drill through it if Mr. Adams did not cooperate.

76. Ms. Beltran then stated that she would need to leave for work soon, and asked to use the phone to call into her job. Defendant Sotelo said that he would call her job for her.

77. Mr. Adams then asked if he could sit because his hernia was causing him pain.

78. Mr. Adams was not allowed to sit. His request was denied because he refused to give the combination to his safe.

79. Mr. Adams then told the Defendants that he would give the combination to the safe if they would let Ms. Beltran get dressed and get ready for work.

80. Defendant Sotelo handed Mr. Adams a piece of paper and a pen to write down the combination.

81. A Defendant Officer and the Lieutenant Officer went upstairs and asked Ms. Beltran to open the safe. She told them to open it, so they opened the safe in front of Ms. Beltran.

82. Ms. Beltran was rushed out of the closet where the safe was located. She saw a Defendant Officer take pictures of the inside of the safe.

83. The Defendant Officers were upstairs by themselves for over an hour.

84. The Defendant Officers then yelled to another Officer to go get the camera from one of the vehicles outside.

85. Mr. Adams could hear the Officers moving things around upstairs.

86. Almost three hours after the Defendants arrived, Mr. Adams was allowed to put on pants and a sweatshirt.

87. Mr. Adams again requested to call his supervisor. Again his request was denied.

88. Mr. Adams then asked Defendant Sotelo to take off the handcuffs because his combat related shoulder injury he had sustained while serving in Iraq was hurting.

89. Defendant Sotelo added an additional pair of handcuffs to the ones that Mr. Adams already wore.

90. Mr. Adams was allowed to call his supervisor and his attorney approximately three hours after the Defendants had arrived.

91. Mr. Adams's attorney, Mr. Jamahl Kearsy, was not able to get any information from the Defendants. Limon refused to speak to Mr. Kearsy.

92. Defendant Sotelo refused to tell Mr. Kearsy where Mr. Adams was going to be taken.

93. Throughout the Defendant's execution of the search warrant, Mr. Adams was cooperative and compliant with the Officers' requests. Mr. Adams told the Defendants that he had ammunition and duty gear in his vehicle.

94. Ms. Beltran was allowed to leave for work around 5:45am.

95. At approximately 6:00am, Mr. Adams was taken outside and had to stand on the sidewalk in front of his neighbors who were leaving for work.

96. Mr. Adams felt humiliated to be seen by neighbors.

97. Mr. Adams was placed in the front seat of the Defendants' vehicle. Defendant Sotelo went up to the window and told Mr. Adams that he was being charged with a felony.

98. Defendant Sotelo stated that he would have to read Mr. Adams his rights because he was "lawyered up."

99. On the drive to San Diego Central Jail, the car was driven in an erratic behavior. The driver, Doe # 1, would make sharp turns and slammed on the breaks.

100. Because Mr. Adams was handcuffed with his hands behind his back, the erratic driving caused him to go head and chest first into the dashboard multiple times.

101. As a result of the unlawful search, Mr. Adams's firearms were unlawfully seized.

**FIRST CAUSE OF ACTION**
**EXECUTION OF A WARRANT OBTAINED IN VIOLATION OF *FRANKS V. DELAWARE* (438 U.S. 154 (1978)) (42 U.S.C. § 1983)**

**(BY PLAINTIFF AGAINST DEFENDANTS SOTELO, LIMON, AND DOES 2 - 50)**

102. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

103. Sotelo and DOES 2 - 50 obtained a search warrant for the search of the home of James Adams.

104. Defendants then executed this search warrant, seizing property that belonged to James Adams.

105. It is clearly established law that a search warrant obtained by the inclusion of false statements, known to be false, or made with reckless disregard, negates probable cause, and is an invalid warrant.

106. Had Defendants Sotelo, or DOES 2-50 acted with due diligence in determining the proper protective order contents, there would have been no probable cause in the warrant application to justify a search of the Adams's home.

107. The execution of this wrongly obtained warrant violated the Fourth Amendment rights of James Adams.

108. This violation of their Fourth Amendment rights under color of state law by Sotelo, Limon, and DOES 2-50 caused damages, including shock, stress, humiliation, pain, and suffering.

**SECOND CAUSE OF ACTION**
**WRONGFUL DETENTION OF SEIZED PROPERTY (42 U.S.C. § 1983)**
**(BY PLAINTIFF AGAINST DEFENDANTS SOTELO, LIMON, AND DOES 2 - 50)**

109. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

110. It is clearly established law that the continued detention of illegally seized items constitutes a Fourth Amendment violation.

111.	In this case, Sotelo, Limon, and DOES 2 - 50 illegally detained the seized property of James Adams.

112.	This detention occurred from July 14, 2015 until approximately March of 2016.

113.	Defendants and DOES 2-50 refused to return the seized property despite multiple requests from James Adams and his counsel.

114.	Defendants and DOES 2-50 refused to return the seized property despite Judge Braner's statements in open Court.

115.	The wrongful and prolonged detention of Mr. Adams' property violated the Fourth Amendment, and caused damages to Plaintiff.

**THIRD CAUSE OF ACTION**
**EXCESSIVE FORCE (42 U.S.C. § 1983)**
**(BY PLAINTIFF AGAINST DEFENDANTS SOTELO, DOE #1 AND DOES 2 - 50)**

116.	Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

117.	42 U.S.C. § 1983 provides in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress.

118.	Plaintiff had a firmly established right under the Fourth Amendment to be free from official infliction of excessive force.

119.	Plaintiff posed no threat to Defendants Sotelo and Does 1-50 when they used excessive force.

1  120. Defendant Sotelo's use of force in forcibly yanking Plaintiff out of his home and handcuffing Plaintiff in a painful and extreme manner when Plaintiff presented no threat to anyone, was unnecessary and excessive.

121. Defendants acted under color of state law in violating Plaintiff's rights.  Doe #1's deliberately erratic and dangerous driving, followed by rapid braking, caused Mr. Adams to slam against the interior of the car, and constituted excessive force.

122. Defendants, acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that use of force in these circumstances was illegal under clearly established law.

123. The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, and further damages according to proof at the time of trial.

124. The conduct alleged herein was done in deliberate or reckless disregard of and plaintiff's constitutionally protected rights; justifying the award of exemplary damages against defendant officers in an amount according to proof at the time of trial in order to deter the defendant from engaging in similar conduct and to make an example by way of monetary punishment.  Plaintiff is also entitled to attorneys' fees and costs of suit herein.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE
### (BY PLAINTIFF AGAINST DEFENDANTS SOTELO, LIMON, DOE #1 AND DOES 2 - 50)

125. Plaintiff realleges all prior paragraphs of this complaint and

incorporate the same herein by this reference.

126. Sotelo, Limon and DOES 2-50 owed a duty of care to Plaintiff to avoid inflicting harm on him by violating the standard of care applicable to a peace officer who is required to comply with the Constitutional restraints on illegal searches, seizures, and detentions of property.

127. Sotelo, Limon and DOES 2-50 had an obligation of due care to confirm an existing and valid restraining order.

128. Sotelo, Limon and DOES 2-50 had an obligation of due care to avoid charging an innocent person with a crime.

129. Sotelo, Limon, and DOES 2-50 violated that standard of care.

130. Sotelo, Limon, and DOES 2-50's conduct, in breach of the standard of care, caused harm to Plaintiff.

131. Doe #1 had an obligation to transport Plaintiff in a safe manner. Instead, Doe #1 drove in a reckless and dangerous manner, causing Plaintiff to hit against the dashboard, resulting in pain and injury.

### FIFTH CAUSE OF ACTION
### BATTERY
### (BY PLAINTIFF AGAINST DEFENDANTS SOTELO, LIMON, DOE #1 AND DOES 2 - 50)

132. Plaintiff realleges all prior paragraphs of this complaint and incorporate the same herein by this reference.

133. Defendants Sotelo, Limon, and DOES 1-50 acted with an intent to cause harmful or offensive contact to Plaintiff, and the intended harmful or offensive contact did in fact occur.

134. The harmful or offensive contact was not privileged nor consented to.

135. The harmful or offensive contact employed by Defendants Sotelo, Limon, and Does 1-50 was not reasonable.

136. As a result of the intent of Defendants to cause harmful or offensive

1  contact with Plaintiff, and the fact that the intended harmful or offensive contact
2  did in fact occur, Plaintiff has suffered damages according to proof at the time
3  of trial.
4      137.  The conduct of Defendant Sotelo, Limon, Doe #1 and DOES 2-50 also
5  amounts to oppression, fraud or malice and punitive damages should be assessed
6  against them for the purpose of punishment and for the sake of example.

### SIXTH CAUSE OF ACTION
### VIOLATION OF CAL. CIV. CODE § 52.1 (BANE ACT)
### (BY PLAINTIFF AGAINST DEFENDANTS SOTELO, LIMON, AND DOES 1 - 50)

   138.  Plaintiff realleges all prior paragraphs of this complaint and incorporate the same herein by this reference.

   139.  The California Legislature has declared that it violates our state civil rights act for any person to interfere with the exercise or enjoyment by any individual of his rights secured by the United States Constitution or state or federal law. This includes any interference of these rights by force, threats, intimidation, coercion or attempted threats, intimidation or coercion.

   140.  Defendants interfered with Plaintiff's rights by the use of force and intimidation alleged above.

   141.  This interference with Plaintiff's rights was perpetrated in violation of California Civil Code Section 52.1 and their right to be free from excessive force under the California Constitution.

   142.  Due to the violation of Plaintiff's rights by Defendants Sotelo, Limon, and DOES 1-50, Plaintiff suffered economic damages and non-economic damages, including, but not limited to, emotional distress, pain and suffering, and fear caused by the acts complained of herein according to proof at the time of trial.

   143.  Plaintiff is also entitled to the statutory civil penalties set forth in Civil Code Section 52, attorneys' fees and costs of suit incurred herein.

145. The conduct of Defendants Sotelo, Limon, and DOES 1-50 also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294 et seq. and punitive damages should be assessed against each non-municipal defendant for the purpose of punishment and for the sake of example.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment as follows:

1) For compensatory general and special damages in an amount in accordance with proof.
2) For punitive damages.
3) For reasonable attorneys' fees, expenses and costs of suit.
4) For any other relief that is just and proper.

## JURY DEMAND

Pursuant to the Seventh Amendment of the U.S. Constitution and Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial by this action.

DATED: June 1, 2017                    Respectfully submitted,

                                              IREDALE AND YOO, APC

                                              s/ *Eugene Iredale*
                                              Eugene G. Iredale
                                              Julia Yoo
                                              Grace Jun
                                              Attorney for Plaintiffs