1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

| 11 | JAMES ADAMS, | Case No.:  3:16-cv-02161-W-NLS |
|---|---|---|
| 12 | Plaintiff, | **ORDER GRANTING EX PARTE APPLICATION FOR COURT TO ISSUE SUBPOENA TO OFFICE OF GENERAL COUNSEL** |
| 13 | v. | |
| 14 | RICHARD SOTELO, ERNEST LIMON, et al. , | |
| 15 | | |
| 16 | Defendant. | **[ECF No. 36]** |

17

18      Before the Court is Defendants' *Ex Parte* Application for Order for Court to Issue

19   Records Subpoena to Office of General Counsel.  ECF No. 36.  Plaintiff filed an

20   opposition and Defendants filed a reply.  ECF Nos. 40, 41.  For the reasons set forth

21   below, the Court **GRANTS** the motion.

22   **I.     Background**

23      Plaintiff Adams brings this action under 42 U.S.C. § 1983 for alleged violations of

24   his rights arising from his arrest by Defendants.  ECF No. 28.  Plaintiff is employed as an

25   Immigration and Customs Enforcement agent.  *Id.* at 3.

26      Plaintiff was involved in a domestic argument on March 20, 2015, where his

27   girlfriend called the police and Plaintiff was charged with battery under California Penal

28   Code § 242.  *Id.* at 4.  A hearing was held on June 8, 2015 during which Plaintiff alleges

the judge specifically ordered him to be allowed to retain his firearms, including his service weapon and his personal firearms. *Id.* In addition, Plaintiff alleges that the judge specifically declined to issue a restraining order but entered a "no negative contact" order. *Id.* Plaintiff received a copy of the court document, which contained the words "no negative contact" and crossed out provisions that prohibited contact. *Id.* Plaintiff alleges that his girlfriend's son later retracted his statement regarding the incident and the charges were subsequently dropped. *Id.*

This June 8, 2015 order triggered a "referral" from the California Department of Justice Armed Prohibited Persons System, which identified Plaintiff as someone prohibited from possessing firearms due to a domestic violence restraining order. *Id.* at 5. On July 13, 2015, Plaintiff alleges that Defendants Richard Sotelo and Ernest Limon visited his home where he lived with his girlfriend. *Id.* at 6. Plaintiff was not home, but Defendants questioned his girlfriend about his firearms. *Id.* Even though his girlfriend told the officers he did not have an outstanding restraining order against him and the judge in the case ordered that he be permitted to keep his firearms, Plaintiff alleges that Defendants obtained a search warrant to search the home. *Id.*

Around 3 a.m. on July 14, 2015, Defendants Sotelo, Limon, and others executed the search warrant at Plaintiff's home. *Id.* at 8. Plaintiff alleges that they awoke to loud banging and Plaintiff sustained injuries when Defendants grabbed him as he opened the door. *Id.* Plaintiff also alleges that he was kept in handcuffs for hours while Defendants searched his home for weapons. *Id.* His weapons were seized and he was taken away in a car driven by Defendant Ramos. *Id.* at 11.

Plaintiff alleges that the search, arrest, and seizure of his property were unlawful as the warrant was obtained illegally and that excessive force was used against him during his detention. *Id.* at 11-14. He also brings state law claims for negligence, battery, and violation of California Civil Code § 52.1. *Id.* at 14-17.

**II.   DISCUSSION**

Defendants move the Court for a subpoena to Plaintiff's employer, Department of

Homeland Security-Immigration and Customs Enforcement ("DHS-ICE").  ECF No. 36.
Specifically, Defendants request the following categories of documents:

1. Records and policies related to all duty weapons issued to Adams by DHS-ICE at anytime between 2014 and 2016.

2. Records and applicable policies related to all personal weapons of Adams reported to DHS-ICE by Adams, for use on duty or otherwise, between 2014 and·2016.

3. All documents or records related to the domestic violence charge brought against Adams in 2015, San Diego Superior Court Case No. S279444, including but not limited to any documents or records to or from Adams, any Court, any law enforcement agency, any Office of Inspector General investigation, or DHS-ICE.

4. All documents or records related to issuance of any criminal protective order against Adams in 2015, San Diego Superior Court Case No: S279444, including but not limited to any documents or records to or from Adams, any Court, any law enforcement agency, any Office of Inspector General investigation, or DHS-ICE.

5. All documents or records related to Adams' arrest for violation of criminal protective order, unlawful possession of firearms and/or ammunition, and unlawful possession of an assault weapon in 2015, including but not limited to any complaints by Adams of related physical or mental injuries and/or civil rights violations, and including but not limited to any documents or records to or from Adams, any Court, any law enforcement agency, any Office of Inspector General investigation, or DHS-ICE.

6. All documents and records that reflect or relate to any work missed or work restrictions resulting from any injury allegedly sustained by Adams as a result of the July 13, 2015 search and arrest by BOF agents.

7. All documents or records related to Adams' prosecution and guilty plea for unlawful possession of an assault weapon in 2015, San Diego Superior Court Case No. S81805, including but not limited to any documents or records to or from Adams, any Court, any law enforcement agency, any Office of Inspector General

1   investigation, or DHS-ICE.

2   ECF No. 36 at 4-5.  DHS-ICE, via the Office of the General Counsel, has informed

3   Defendants twice that it will not comply with a subpoena unless it was ordered by a

4   court.  ECF No. 36 at 2.

5       The main dispute between the parties centers on whether the Privacy Act bars the

6   disclosure of these documents to Defendants without Plaintiff's permission.  The Privacy

7   Act states that "[n]o agency shall disclose any record which is contained in a system of

8   records by any means of communication to any person, or to another agency, except

9   pursuant to a written request by, or with the prior written consent of, the individual to

10  whom the record pertains."  5 U.S.C. § 552a(b).  However, the Act contains several

11  exceptions, including when such request is "pursuant to the order of a court of competent

12  jurisdiction."  *Id.* § 552a(b)(11).  Thus, records that might otherwise be protected by

13  the Act may still be discovered through litigation if ordered by a court.  *Ayers v. Lee*, No.

14  14-cv-542-BGS (NLS), 2017 WL 2472840, at *3 (S.D. Cal. June 8, 2017).  The test of

15  discoverability in such a circumstance remains Rule 26's relevance standard.  *Id.*; *see*

16  *also  Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987) ("[A] party can

17  invoke discovery of materials protected by the Privacy Act through the

18  normal discovery process and according to the usual discovery standards, and the test of

19  discoverability is the relevance standard of Rule 26(b)(1) of the FRCP.").

20      Rule 26 permits discovery of "any nonprivileged matter that is relevant to any

21  party's claim or defense and proportional to the needs of the case, considering the

22  importance of the issues at stake in the action, the amount in controversy, the parties'

23  relative access to relevant information, the parties' resources, the importance of the

24  discovery in resolving the issues, and whether the burden or expense of the proposed

25  discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "The 2015 amendments

26  to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through

27  increased reliance on the common-sense concept of proportionality.'"  *Roberts v. Clark*

28  *Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted).

Information need not be admissible to be discoverable. *Id.* The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

As to Requests 1 and 2, Defendants seek information related to Plaintiff's duty weapons and personal weapons. Plaintiff argues that the transcript from the June 8, 2015 court appearance shows that he was permitted to keep his "duty" weapon, so no further information is needed regarding the rest of his weapons. ECF No. 40 at 7. However, Defendants state—and Plaintiff did not refute in his opposition—that there is a claim that Plaintiff did not carry his employer-issued duty firearm on duty, but instead a personal firearm. ECF No. 36 at 3. This claim would make Plaintiff's duty weapon and personal weapons and any policies regarding these weapons potentially relevant to the issue of what exact weapon(s) Plaintiff was permitted to retain per the court order.

Next, as to Requests 3-5 and 7, each of these requests seeks information in DHS-ICE's possession regarding the domestic violence charge against Plaintiff, the issuance of and his arrest for violation of the criminal protective order, and Plaintiff's subsequent prosecution and plea for unlawful possession of an assault weapon. Defendants argue that Plaintiff admits that there were employer-related Office of Inspector General investigations into these events, and therefore, they should be able to discover what statements and representations Plaintiff made to his employer in these investigations. ECF No. 36 at 3-4. Plaintiff argues that what he may have told his employer has no relevance in this lawsuit, as all the relevant material lies with what is the Superior Court files and records. ECF No. 40 at 6-7. Defendants counter that Plaintiff's statements to his employers at least can be used to corroborate or undermine Plaintiff's claims in this case and are therefore relevant. The Court agrees and finds that these requests target discoverable information. In addition, since Plaintiff's employer is already aware of these incidents through its internal investigations, these requests should not cause Plaintiff any additional undue embarrassment or harassment.

Lastly, Request 6 seeks information that is relevant Plaintiff's injuries, allegedly

incurred as a result of the July 14, 2015 search and arrest.  While Plaintiff is correct that medical records will be evidence of his injuries, that does not make this request duplicative or pointless.  The work missed by Plaintiff and any work restrictions he may have been placed on can serve to corroborate the medical evidence as to the extent of his injuries.

## III.   CONCLUSION

As set forth above, the Court **GRANTS** Defendants' *Ex Parte* Application for Order for Court to Issue Records Subpoena to Office of General Counsel.  The Office of the General Counsel shall comply with the subpoena issued by Defendants regarding the records of Plaintiff James Adams consistent with the requests discussed in this Order.

**IT IS SO ORDERED.**

Dated:  June 18, 2018

Hon. Nita L. Stormes
United States Magistrate Judge

3:16-cv-02161-W-NLS